[639 NYS2d 623]

Barbara Piper et al., Respondents, v International Business Machines Corporation, Appellant. (Appeal No. 2.)

Fourth Department, March 8, 1996

APPEARANCES OF COUNSEL

*Cerussi & Spring,* White Plains *(Anne E. Kershaw, Joseph A. D'Avanzo* and *Peter Riggs* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, L. L. P.,* Buffalo *(John A. Collins* of counsel), for respondents.

## OPINION OF THE COURT

GREEN, J.

Barbara Piper (plaintiff) seeks to recover damages for injuries she allegedly sustained as the result of typing on a computer keyboard manufactured by defendant International Business Machines Corporation (IBM). The sole issue before us is whether the action is barred by the three-year limitation period of CPLR 214 (5). Resolution of that issue turns on when the Statute of Limitations began to run. We hold that, in the circumstances presented, accrual is measured from the date on which each of plaintiff's alleged injuries manifested itself.

From 1987 until early January 1990, plaintiff was employed as a secretary at Clarklift of Buffalo. During that period, she typed on an IBM PCXT keyboard an average of $5^{1}/_{2}$ hours per workday. In 1987 plaintiff began to experience occasional pain, stiffness, tingling and numbness in her right hand. She first consulted a physician in August 1989, when those symptoms became more persistent and intense. At that time she was diagnosed with right carpal tunnel syndrome. Three months later, the same symptoms developed in plaintiff's left hand. Plaintiff returned to her physician and was diagnosed with left carpal tunnel syndrome.

Plaintiff commenced this action on April 4, 1991. Relying upon the admission by plaintiff that she first experienced symptoms of her alleged injuries in 1987, more than three years prior to the commencement of the action, IBM moved for summary judgment dismissing the complaint as time barred. In opposition to the motion, plaintiff submitted an affidavit from Dr. Norman Petigrow, a surgeon specializing in occupational medicine. After reviewing plaintiff's medical rec-

ords, Dr. Petigrow concluded that plaintiff did not sustain injury to her right hand until August 1989, when the pain, tingling and stiffness she was experiencing ripened into a diagnosable condition, i.e., right carpal tunnel syndrome. Dr. Petigrow further asserted that, "[c]arpal tunnel syndrome of the left hand is a totally separate and distinct injury from carpal tunnel syndrome of the right hand." Plaintiff did not sustain injury to her left hand, the doctor determined, until she was diagnosed with left carpal tunnel syndrome in November 1989.

Supreme Court denied IBM's motion for summary judgment, concluding: (1) that there is a question of fact when the injury to plaintiff's right hand occurred and (2) that the evidence established as a matter of law that the injury to plaintiff's left hand occurred within the statutory period. The court subsequently granted IBM's motion for reargument and, upon reargument, adhered to its determination denying summary judgment.

Based upon the evidence presented, we share Supreme Court's view that plaintiff's right and left carpal tunnel syndrome are separate injuries for Statute of Limitations purposes. We do not agree, however, that there is a question of fact when the injury to plaintiff's right hand occurred. In our view, defendant's motion for summary judgment dismissing the complaint should have been granted to the extent that the complaint seeks damages arising from injury to plaintiff's right hand.

As a general rule, an action to recover damages for personal injuries must be commenced within three years from the date of injury (*see, Snyder v Town Insulation*, 81 NY2d 429, 432; *Victorson v Bock Laundry Mach. Co.*, 37 NY2d 395, 399; *Schmidt v Merchants Desp. Transp. Co.*, 270 NY 287, 300-301, *rearg denied* 271 NY 531; *but see*, CPLR 214-a, 214-b, 214-c). The injury itself, rather than the negligent act by defendant or discovery of the wrong by plaintiff, marks the date of accrual (*see, Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94). "Stated another way, accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint" (*Snyder v Town Insulation, supra*, at 432).

Fixing the date of injury, however, is not simply a matter of expert medical opinion or empirical fact. Rather, determining when the Statute of Limitations begins to run "depends on a nice balancing of policy considerations" (*Victorson v Bock Laundry Mach. Co., supra*, at 403; *accord, Snyder v Town*

*Insulation, supra,* at 435). As a matter of policy, the courts have sought to balance "the manufacturer's interest in defending a claim before his ability to do so has deteriorated through passage of time, on the one hand, and, on the other, the injured person's interest in not being deprived of his claim before he has had a reasonable chance to assert it" (*Martin v Edwards Labs.,* 60 NY2d 417, 425).

As the Court of Appeals recognized in *Martin v Edwards Labs. (supra),* practical and policy considerations have produced three distinct lines of cases addressing accrual in situations where, as here, the development of the condition for which compensation is sought is not immediately apparent to the injured plaintiff. In cases where the injury results from the inhalation, ingestion or injection of harmful substances, the time to sue runs from the introduction of that harmful substance into the body (*see, Consorti v Owens-Corning Fiberglas Corp.,* 86 NY2d 449 [inhalation of asbestos]; *Snyder v Town Insulation, supra* [inhalation of ureaformaldehyde foam insulation]; *Fleishman v Eli Lilly & Co.,* 62 NY2d 888, *rearg denied* 63 NY2d 771, *mot to amend remittitur granted* 63 NY2d 1017, *cert denied* 469 US 1192 [ingestion of diethylstilbestrol]; *Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008, *mot to amend remittitur granted* 55 NY2d 802, *cert denied* 456 US 967 [inhalation of asbestos]; *Thornton v Roosevelt Hosp.,* 47 NY2d 780 [injection of thorium dioxide]; *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, *mot to amend remittitur granted* 12 NY2d 1073, *cert denied* 374 US 808 [injection of carcinogenic substance]; *Schmidt v Merchants Desp. Transp. Co., supra* [inhalation of dust]).* A second line of cases, arising from the alleged negligence of a physician in leaving a foreign object in the patient's body, measures accrual from the date on which "the patient could have reasonably discovered the malpractice" (*Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427, 431; *see,* CPLR 214-a). A third line of cases "deals with products which remain entirely outside the body but through defect cause personal injury to a remote user" (*Martin v Edwards Labs., supra,* at 426). The date of injury rule developed there (*see, Victorson v Bock Laundry Mach. Co., supra*) was extended to cases

---

* CPLR 214-c, enacted in 1986, provides that actions to recover for the latent effects of exposure to toxic substances accrue on the date of discovery or the date when through the exercise of reasonable diligence the injury should have been discovered, rather than the date of initial exposure. Neither party has addressed that section, so that its applicability is not at issue on this appeal.

involving the intended implantation of medical devices into the body. In those cases, accrual is fixed at the time of injury, "which will most often be the date when the product malfunctions" (*Martin v Edwards Labs., supra,* at 428).

In the instant case, both parties agree that plaintiff's action accrued at the date of injury. That point of accord, however, does not lead to agreement on the accrual date. The date of injury rule shared by the toxic substance exposure cases and the implanted medical device cases differs significantly in its application. In toxic substance exposure cases, the Court of Appeals has emphatically rejected "a fact-based date of medical injury test" in favor of a bright line rule that the time to sue begins to run "upon the introduction of the toxic substance into the body" (*Consorti v Owens-Corning Fiberglas Corp., supra,* at 451, 452). In determining the date of injury in cases involving implantation of defective medical devices, on the other hand, the Court has recognized that "complicated medical questions may be involved and professional diagnostic judgment implicated" (*Martin v Edwards Labs., supra,* at 427).

Plaintiff urges us to adopt the fact-dependent, case-by-case approach of *Martin.* Through her expert, Dr. Petigrow, plaintiff takes the position that the date of injury for Statute of Limitations purposes is the date that her symptoms developed into a diagnosable condition. She asserts, moreover, that determination of that date cannot be made without the aid of expert medical opinion.

We reject the "fact-based date of medical injury test" advocated by plaintiff (*Consorti v Owens-Corning Fiberglas Corp., supra,* at 451). The injury to plaintiff is not identical to the occupational disease for which she seeks compensation (*see, Snyder v Town Insulation, supra,* at 433; *Schmidt v Merchants Desp. Transp. Co., supra,* at 301). Disease is a consequence of injury, not the injury itself (*Snyder v Town Insulation, supra,* at 433; *Schmidt v Merchants Desp. Transp. Co., supra,* at 301). "The injury occurs when there is a wrongful invasion of personal or property rights and then the cause of action accrues" (*Schmidt v Merchants Desp. Transp. Co., supra,* at 300).

To determine when that wrongful invasion occurred, defendant does not propose that we apply the bright line, date of first exposure rule of the toxic tort cases. Under that rule, accrual would be measured from the date plaintiff first struck a key on the IBM keyboard. Instead, defendant urges us to follow the date of injury test that has developed in several New York County Supreme Court cases applying the three-year

Statute of Limitations to repetitive stress injuries (*see, Wallen v American Tel. & Tel. Co.,* Sup Ct, Bronx County, Sept. 17, 1992, Saks, J., index No. 12336/91, *affd* 195 AD2d 417 *for reasons stated at Sup Ct, lv denied* 82 NY2d 659; *Johansen v Honeywell, Inc.,* 167 Misc 2d 996; *Pla v Dell Computer Corp.,* Sup Ct, NY County, Sept. 9, 1994, Crane, J., index No. 123756/93; *Hulse v Dick Co.,* Sup Ct, NY County, Aug. 18, 1994, Crane, J., index No. 17699/92; *Pickering v Mitsumi Elecs. Co.,* Sup Ct, NY County, Sept. 15, 1994, Crane, J., index No. 499000/93). *Pla, Hulse* and *Pickering,* as well as a number of Federal District Court cases applying New York law (*see, Parajecki v International Bus. Machs. Corp.,* 899 F Supp 1050; *Benne v International Bus. Machs.,* 887 F Supp 1395; *Kuechler v 805 Middlesex Corp.,* 866 F Supp 147; *Anderson v Atex, Inc.,* 1994 WL 593790 [SD NY, Oct. 28, 1994, Lasker, J.]; *Adams v Key Tronic Corp.,* 1994 WL 594779 [SD NY, Oct. 31, 1994, Lasker, J.]), all follow the reasoning of Justice Saks in *Wallen (supra)* and Justice Crane in *Johansen (supra).* The date of injury rule that has emerged from those repetitive stress injury cases is that accrual is measured from the earlier of two dates: the plaintiff's last use of the computer equipment (*see, Parajecki v International Bus. Machs. Corp., supra,* at 1055) or the onset of the plaintiff's symptoms (*Wallen v American Tel. & Tel. Co., supra; Pla v Dell Computer Corp., supra; Hulse v Dick Co., supra; Kuechler v 805 Middlesex Corp., supra; Anderson v Atex, Inc., supra*). A corollary of the *Wallen/Johansen* accrual rule is that, if an action is not commenced within three years of accrual, the plaintiff may not recover for any alleged aggravation of his or her injury occurring within the statutory period (*Wallen v American Tel. & Tel. Co., supra; accord, Johansen v Honeywell, Inc., supra; Parajecki v International Bus. Machs. Corp., supra; Kuechler v 805 Middlesex Corp., supra; Anderson v Atex, Inc., supra*).

In our view, the accrual rule articulated in *Wallen* and *Johansen* "reflects a policy that there must come a time after which fairness demands that a defendant should not be harried," along with "a balancing sense of fairness to the [plaintiff] that [s]he shall not unreasonably be deprived of [her] right to assert [her] claim" (*Caffaro v Trayna,* 35 NY2d 245, 250). Unlike the toxic tort exposure cases, this case does not present a situation where "the forces of harm [were] inexorably set in motion" when plaintiff was first exposed to the injury-causing product (*Martin v Edwards Labs., supra,* at 427). Thus, there is no basis for measuring accrual from plaintiff's first use of the

computer equipment. Indeed, if a date of first exposure rule applied in cases of repetitive stress injury, "a cause of action might be barred before liability arose" (*Schmidt v Merchants Desp. Transp. Co., supra,* at 300). At the same time, under a rule delaying accrual until last use of the product or actual awareness of the nature of the injury, "a plaintiff would have the power to put off the running of the Statute of Limitations indefinitely" (*Snyder v Town Insulation, supra,* at 435). Fixing the date of injury at the first onset of symptoms deprives plaintiff of that power, but not of a reasonable opportunity to bring her action.

Applying the *Wallen/Johansen* accrual rule to the facts of the instant case, we conclude that, insofar as plaintiff seeks to recover for injury to her right hand, the action is time barred. By her own admission, plaintiff experienced symptoms of right carpal tunnel syndrome in 1987, over three years prior to the commencement of the action.

The question remains, however, whether the action is timely insofar as plaintiff seeks damages for injury to her left hand. In *Wallen,* the court left open the possibility that a plaintiff who suffered her first repetitive stress injury outside the statutory period could nevertheless maintain an action for "qualitatively different" injuries occurring within that period (*Wallen v American Tel. & Tel. Co., supra; see also, Parajecki v International Bus. Machs. Corp., supra,* at 1057; *Kuechler v 805 Middlesex Corp., supra,* at 149; *Anderson v Atex, Inc., supra,* at * 2). Subsequent cases have resolved that question in the plaintiff's favor (*see, Kuechler v 805 Middlesex Corp., supra,* at 149, citing *Blau v 805 Middlesex Corp.,* Sup Ct, NY County, Aug. 22, 1994, Crane, J., index No. 124779/93; *see also, Parajecki v International Bus. Machs. Corp., supra,* at 1059 [claim for injuries sustained within statutory period time barred unless those injuries are "separate and distinct" from injuries sustained outside statutory period]).

Plaintiff submitted expert medical proof that "[c]arpal tunnel syndrome of the left hand is a totally separate and distinct injury from carpal tunnel syndrome of the right hand," along with her sworn statement that she experienced no symptoms in her left hand prior to November 1989. Based upon that proof, the court properly denied that part of defendant's motion for summary judgment dismissing that part of the complaint seeking damages for injury to plaintiff's left hand. Unlike the diseases for which compensation is sought in the toxic tort exposure cases, the carpal tunnel syndrome in plaintiff's

left and right hands did not result from the same injury (*see, Chase Packaging Corp. v Dorsey*, 15 Va App 248, 253, 421 SE2d 907; *cf., Dugan v Schering Corp.,* 86 NY2d 857 [cervical cancers diagnosed in 1976 and 1990 resulting from mother's ingestion of dienestrol not separate injuries for Statute of Limitations purposes]). Nor can the carpal tunnel syndrome in plaintiff's left hand be characterized as an aggravation or exacerbation of the carpal tunnel syndrome in plaintiff's right hand. We conclude, therefore, that the action is timely insofar as it seeks damages for injury to plaintiff's left hand.

Accordingly, the order appealed from should be modified by granting in part defendant's motion for summary judgment and dismissing that part of the complaint seeking damages for injury to plaintiff's right hand.

DENMAN, P. J., WESLEY, BALIO and DAVIS, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by GREEN, J.