_____

No. 96-1154
_____

Wesley G. Thorn; Cheri Thorn,    *
                                 *
     Plaintiff/Appellants,       *
                                 *
     v.                          *
                                 *
International Business           *   Appeal from the United States
Machines, Inc.,                  *    District Court for the Western
                                 *    District of Missouri.
     Defendant/Appellee,         *
                                 *
Honeywell, Inc.,                 *
                                 *
     Defendant.                  *


                    Submitted:  September 11, 1996

                       Filed:  November 22, 1996
                            _____

Before BEAM, HEANEY, and MURPHY, Circuit Judges.
                            _____

BEAM, Circuit Judge.


     This products liability action requires us to decide the appropriate statute of limitations governing a repetitive stress injury claim originally filed in New York and transferred to Missouri.  For the reasons discussed below, we find that New York's three-year limitations period applies and that the claims are time-barred.  We therefore affirm the district court's[1] grant of summary judgment.

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

## I.   BACKGROUND

Wesley Thorn worked for the State of Missouri for eight years. During that time he typed on various International Business Machines (IBM) computer keyboards. Wesley testified at his deposition and through interrogatories that he first experienced discomfort in his arms in August of 1988. The symptoms became more persistent and intense, until Wesley was diagnosed with repetitive stress injuries (RSI) in 1992.

The Thorns filed this diversity suit in New York on January 29, 1993, seeking compensation for Wesley's injuries and Cheri's loss of consortium.[2] On motion of IBM, the Thorns' action was transferred to the United States District Court for the Western District of Missouri. See 28 U.S.C. § 1404(a). After much discovery, IBM moved for summary judgment on the ground that the Thorns' claims were time-barred.[3] The district court granted that motion. The Thorns appeal.

## II.   DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standard as the district court and examining the record in the light most favorable to the nonmoving party. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996). Summary judgment is appropriate when the record reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996).

---

[2]The Thorns' case was originally consolidated with other pending keyboard product liability actions. The consolidation orders were subsequently vacated. See In re Repetitive Stress Injury Litigation, 11 F.3d 368 (2d Cir. 1993).

[3]Pursuant to a joint motion of the parties, the district court had earlier dismissed the action against Honeywell, Inc.

**A.    Choice of Law**

The statute of limitations from the transferor court governs diversity cases transferred to another federal venue. "[T]he transferee district court must . . . apply the state law that would have been applied if there had been no change of venue." Van Dusen v. Barrack, 376 U.S. 612, 639 (1963).  This rule applies regardless of which party initiated the change in venue.  Ferens v. John Deere Co., 494 U.S. 516, 524-25 (1990).  Thus, Van Dusen mandates application of New York law in this case.

The Thorns concede this general rule, but claim that IBM is estopped from asserting New York's limitations period.  They rely on footnote number 27 in Van Dusen in which the Court explains previous trial court practice. Van Dusen, 376 U.S. at 631.   This observation does not constitute a directive to lower courts.  The Thorns also rely on Greve v. Gibraltar Enter., Inc., 85 F. Supp. 410 (D.N.M. 1949). The 1949 Greve decision precedes and is inconsistent with both Van Dusen and Ferens and is therefore unreliable precedent.  We find no other support for the Thorns' position.  See Benne v. IBM, 87 F.3d 419, 424 (10th Cir. 1996) (refusing to apply estoppel approach in similar circumstances).

Furthermore, the facts of this case do not evoke estoppel principles. The Thorns point out that IBM argued in its transfer motion that the case should be decided under Missouri substantive law.  However, that does not imply a promise not to use traditional conflict of law principles to apply transferor state procedural rules.  The Thorns do not argue any detrimental reliance on a belief that Missouri law would govern the case upon transfer. Finally, it was the Thorns, not IBM who chose to file their claim in New York.  They should not now be heard to complain about application of the law of the forum they themselves chose. The Thorns' claim must, therefore, be analyzed under New York law.

**B.    New York's Statute of Limitations**

New York's borrowing statute supplies the limitations rule for injuries occurring outside the state.  N.Y. C.P.L.R. 202 (McKinney 1990). That statute requires the Thorns' claims to be timely filed under both New York and Missouri law.  Id.  IBM concedes that the Thorns' claims were filed within Missouri's statutory period, so only the New York statute is at issue here.

Under New York law, actions for personal injuries must be commenced within three years of the accrual of the cause of action.  N.Y. C.P.L.R. 214(5) (McKinney 1990).  In most cases, a cause of action accrues on the date of the injury.  See Snyder v. Town Insulation, 615 N.E.2d 999, 1000 (N.Y. 1993).  However, a special "discovery rule" applies to injuries caused by "latent effects of exposure to any substance or combination of substances, in any form, upon or within the body." N.Y. C.P.L.R. 214-c (2) (McKinney 1990).  For injuries covered by 214-c, the limitations period does not begin to run until the injury is discovered.  Id.  The Thorns assert that their injuries fall within the discovery rule.

In Wallen v. American Tel. & Tel. Co., Index No. 12336/91 (N.Y. Sup. Ct. 1992), aff'd, 601 N.Y.S.2d 796 (N.Y. App.), leave to appeal denied, 625 N.E.2d 590 (1993), the court refused to apply 214-c to RSI cases.  New York state courts have followed Wallen.  Blanco v. American Tel. & Tel. Co., 646 N.Y.S.2d 99 (N.Y. App. 1996).  Computer keyboards are not a "substance" within the ambit of 214-c:

> Simply put, a keyboard is not a substance, toxic or otherwise. Plaintiffs' injuries were allegedly incurred by direct contact with a tangible object, not a substance, and the term `substance' was no more meant to encompass a piece of office equipment than it was meant to include any other ordinary product.

Id. at 102.

Much of the Thorns' position rests on criticism of <u>Wallen</u> and its progeny. They argue that <u>Wallen</u> was ill-conceived and speculate that New York's highest court could reject <u>Wallen</u> when it considers the RSI issue. However, the Thorns' dissatisfaction with <u>Wallen</u> does nothing to lessen its force as New York precedent. The <u>Wallen</u> decision is the law of New York, and other state courts applying New York law are bound by it. <u>See</u>, <u>e.g.</u>, <u>Johansen v. Honeywell, Inc.</u>, 642 N.Y.S.2d 459, 460 (N.Y. Sup. Ct. 1994) ("[I]t is no longer open to this court . . . to entertain plaintiffs' criticisms of the <u>Wallen</u> decision. [Its] reasoning is binding on me.").

Although federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, their decisions are highly persuasive and should be followed when they are the best evidence of state law. <u>B.B. v. Continental Ins. Co.</u>, 8 F.3d 1288, 1291 (8th Cir. 1993). New York courts have uniformly held that RSI claims cannot be brought under 214-c and the Thorns have not persuaded us that these decisions do not represent the law of New York. Furthermore, other federal courts sitting in diversity have concluded that 214-c does not apply to RSI cases. <u>E.g.</u>, <u>Harrison v. Olivetti Office USA, Inc.</u>, 1996 WL 529175 at *2 (D.D.C. 1996) (noting that the District of Columbia's federal district courts have refused to apply 214-c to RSI litigation transferred from New York). We conclude that the "discovery rule" of 214-c does not apply to the Thorns' RSI claims.

**C.    Accrual of the Cause of Action**

The next step in statute of limitations analysis is to determine when the cause of action accrued. In New York "an injury is deemed to have occurred for statute of limitations purposes no later than the time that the injurious process first manifests itself." <u>Wallen</u>, slip op. at 2. Most recently, a New York federal

district court held that a plaintiff's RSI cause of action had accrued shortly before she began experiencing painful symptoms. <u>Dorsey v. Apple Computers, Inc.</u>, 936 F. Supp. 89, 90 (E.D.N.Y. 1996). In <u>Dorsey</u>, Judge Weinstein first observed that "New York courts attempt to strike a balance between the needs of plaintiffs in pursuing a claim, and the needs of defendants in responding without inappropriate delays. . . . [T]he length of time that a plaintiff should have to assert his claim depends on a nice balancing of policy considerations." <u>Id.</u> at 91 (citations and quotations omitted). Judge Weinstein concluded that under such a balancing approach "`accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.'" <u>Id.</u> at 92 (quoting <u>Kronos, Inc. v. AVX Corp.</u>, 612 N.E.2d 289, 292 (N.Y. 1993)).

The <u>Wallen</u> approach has been reaffirmed by New York appellate courts:

> In our view, the accrual rule articulated in <u>Wallen</u> [is the appropriate one.] [I]f a date of first exposure rule applied in cases of repetitive stress injury, a cause of action might be barred before liability arose. At the same time, under a rule delaying accrual until last use of the product or actual awareness of the nature of the injury, a plaintiff would have the power to put off the running of the Statute of Limitations indefinitely. Fixing the date of injury at the first onset of symptoms deprives plaintiff of that power, but not of a reasonable opportunity to bring her action.

<u>Piper v. IBM</u>, 639 N.Y.S.2d 623, 626-27 (N.Y. App. 1996) (citations omitted).

The uncontradicted evidence indicates that Wesley Thorn's "first onset of symptoms" occurred in 1988. <u>Id.</u> at 27. Wesley testified that in August of 1988, "I was first starting to get some inkling of symptoms." Jt. App. at 101. In 1988 he began experiencing "tiredness" in his upper arms and shoulders. He had